# Sullivan Timber Co. *v.* Louisville & Nashville R. R. Co.

## *Destruction of Property by Fire.*

(Decided June 30, 1909.   Rehearing denied Dec. 16, 1909.   50 South. 941.)

1. *Railroads; Operation; Setting Out Fire; Contributory Negligence.*—A plea as an answer to an action for the destruction of property set out by fire from a locomotive of defendant, asserting that defendant's servants had thrown a large quantity of inflammable grass and weeds into the street near plaintiff's office, and that,

though there was danger of fire being communicated to such grass and weeds from the defendant's locomotive, plaintiff negligently allowed such material to remain was not subject to demurrer, since one aware of another's wrong which is likely to lead to his injury cannot remain inactive to avert such injurious consequences and then claim damages for injury approximately flowing therefrom.

2. *Same; Burden of Proof.*——Where the action was against a railroad company for setting out fire and there was evidence tending to show that plaintiff's building was ignited by fire from defendant's locomotive the burden passes to the defendant to show at least prima facie that the fire was emitted without negligence in the construction, equipment and operation of the locomotive.

3. *Same; Burden of Proof.*—The fact that a locomotive running fifty miles an hour and under greater head of steam emits more sparks than one running twenty-five miles an hour, is not of itself enough to show that the former engine is negligently operated, constructed or equipped.

4. *Discovery; Interrogatories; Answers.*—It is not ground for striking out answers to interrogatories propounded to the adverse party under section 1850, Code 1896, that they are merely irresponsive. (McClellan, Mayfield and Sayre, JJ., dissent in part.)

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by the Sullivan Timber Company against the Louisville & Nashville Railroad Company. From the judgment, plaintiff appeals. Affirmed.

The facts in this case may be found in a former report of the case under the style of *Louisville & N. R. R. Co. v. Sullivan Timber Co.*, 138 Ala. 379, 35 South. 327. For the purpose of this opinion, it is deemed necessary to set out count 6, which is as follows: "(6) The plaintiff, for amendment to its complaint in this cause, and as a part of each count herein set forth, avers that heretofore, and at the time of the matters and things complained of, it was possessed of certain lands and premises in the city and county of Mobile, in the state of Alabama, and upon which was located its sawmill, dry kilns, sheds, offices, and other buildings, and on which premises it had large quantities of lumber, shingles, wagons, and other valuable property, which said property was bounded on the west by Water street, and that on the eastern line

of said Water street was located its offices and a lumber shed, the western side of which kiln was constructed of plank; and the defendant was, prior to and at the time aforesaid, possessed of a certain railroad track and a right of way along and over said Water street, in said city of Mobile, and in front of said plaintiff's premises, which said railroad track was at said time within 30 feet of said plaintiff's land and premises, and upon which said railroad track the defendant ran and operated its engine, locomotive, and cars by steam power. And plaintiff says that on, to wit, the 29th day of September, 1896, fire escaped from a locomotive engine which was then being run by defendant along said Water street in front of plaintiff's said premises, and was communicated to plaintiff's said premises, and that thereby the following property of plaintiff thereon was burned and destroyed: (Here follows description of the property.) And plaintiff was thereby damaged in the amount of $25,000, for which it brings this suit. And it avers that until the same was cut down by defendant's servant there was growing upon said Water street, between plaintiff's said premises and said railroad track, grass and weeds, and that on, to wit, the 24th day of September, 1896, a large quantity of such grass and weeds was cut down by defendant's servant under its direction, and was then negligently and wrongfully thrown towards and near plaintiff's said office, and the side of its said shed, and was by defendant negligently and wrongfully allowed to be and remain near plaintiff's said premises, and that said such grass and weeds there became dry and inflammable. And plaintiff avers that the fire so escaping from defendant's locomotive as set forth above fell into and ignited such dry grass and weeds, and thence was communicated to plaintiff's said property, and destroyed and damaged its property, all as set forth above."

Plea 2 was as follows: "(2) To the sixth count, filed as above, the defendant says that the west line of plaintiff's lumber shed on the east side of Water street was constructed of inflammable boards, set upright, .with cracks between them, and that said shed was covered with wooden timbers, and was so situated that, should combustible material lying in Water street and opposite thereto be set on fire, said shed would be in great danger of being burned; and the remainder of said property mentioned in said counts of the complaint was so situated as to be in great danger of being burned should said shed be set on fire, all of which was well known to plaintiff before the matter and things complained of. Defendant's engine passed said property frequently on each day, and fire frequently escaped therefrom and fell upon that portion of Water street that was opposite the plaintiff's premises, which said fact was well known to plaintiff. And defendant further avers that plaintiff knew that defendant's servants had negligently thrown a large quantity of grass and weeds towards and near plaintiff's office, and the side of the said shed, and that defendant had negligently allowed it to remain near plaintiff's said premises, and that said grass and weeds were dry and inflammable, and that there was danger of fire escaping from defendant's locomotives, or some of them, and falling into and igniting such dry grass and weeds, and of thereby communicating fire to the plaintiff's premises and destroying and damaging its property, unless such weeds and dry grass were promptly removed, and the plaintiff nevertheless allowed the said dry grass to be and remain in said street and near its said premises, which said negligence on the part of the plaintiff proximately contributed to the damages in said counts complained of."

[Sullivan Timber Co. v. Louisville & Nashville R. R. Co.]

The following demurrers were filed to plea 2: "(1) Because said plea shows that said defendant's servant negligently put said grass and weeds and inflammable matter near plaintiff's property and caused the dangerous condition to exist, whereby the fire escaping from defendant's engine set the said inflammable matter on fire. (2) Because it was not incumbent on plaintiff to remove the dangerous condition in said plea mentioned, created by the negligence of the defendant's servant. (3) Said plea shows that said dangerous condition which proximately contributed to cause the damage complained of was brought about by the negligence of the defendant's servant."

L. H. & E. W. FAITH, and R. H. & N. R. CLARKE, for appellant.—Counsel insist that while the lower court had the highest authority for overruling demurrers to the special pleas (former report of this case, 138 Ala. 396), yet, that that decision should be overruled or at least limited to those pleas which set up that an agent of plaintiff saw the fire and had the present ability to extinguish, and failed to do so.—1 Sedg. on Dam. 164; L. & N. v. Miller, 109 Ala. 506; L. & N. v. Marbury L. Co., 125 Ala. 260; 8 A. & E. Ency. of Law, 16 Note 1; 13 Id., 481. Counsel discuss assignments of error relative to evidence.—Culver v. A. N. R. R. Co., 108 Ala. 330; Foxworthy v. Brown, 120 Ala. 66; Brazell v. Maas., 116 Ala. 79. It is the duty of railroads to keep abreast of the improved methods, and to adopt such appliances as are in such ordinary use.—G. P. Ry. Co. v. Propst, 83 Ala. 518; Wilson v. L. & N., 85 Ala. 272; L. & N. v. Hall, 91 Ala. 112; R. & D. R. R. Co. v. Jones, 92 Ala. 218. Counsel also discuss given and refused charges, but without citation of authority.

9—163

GREGORY L. H. &. H. T. SMITH, for appellant.—The court properly overruled demurrers to the special pleas. —*L. & N. v. Sullivan T. Co.*, 35 South. 357; Sedg. on dam. 105; *Miller v. Mariner*, 7 Green. 55; *Strauss v. Mertief*, 64 Ala. 307; *Murrell v. Whitney*, 32 Ala. 66; *Lilly v. Fletcher*, 81 Ala. 237; *Ry. Co. v. McClellan*, 42 Ill. 359; 24 Pac. 416; 45 S. W. 225; 12 South. 447. The court properly struck some of the answers to the interrogatories.—*Garrison v. Glass*, 36 South. 725; *Wilson v. Marion*, 21 Ala. 365; *Pritchard v. Monroe*, 21 Ala. 508. Counsel discuss the charges and they conclude that under the evidence defendant was entitled to the affirmative charge, and hence, there was no error.—*L. & N. v. Marbury L. Co.*, 125 Ala. 252; *L. & N. v. Sullivan T. Co.*, 35 South. 334; *A. G. S. v. Roach*, 116 Ala. 620. There was no testimony excluded upon the motion of the defendant which if admitted, would have changed the result, and hence any errors along that line were without injury.—126 Ala. 135; 112 Ala. 500; 100 Ala. 506; 121 Ala. 158.

McCLELLAN, J.—The status, in pleading and in fact of this case, will be found accurately set down in the report of this litigation on former appeal.—*L. & N. R. R. Co. v. Sullivan Timber Co.*, 138 Ala. 379, 35 South. 327. The chief question argued on this appeal concerns the ruling of the court below, following the decision of this court on the other appeal, affirming the sufficiency of plea 2, against the demurrers assigned, as a defense to the sixth count of the complaint. The sixth count averred that the negligence consisted in the negligent accumulation by the defendant, of combustible material along side or near the defendant's roadway. The former ruling, in this case, was but the application of the principle announced in *Lilly v. Fletcher*, 81 Ala. 234, 1

South. 273. A careful re-examination of the principle, as applicable to the case at bar, confirms the soundness of the ruling made, in this regard, on the former appeal.

None of our adjudications, pressed upon us by counsel for appellant, relate to the application of the principle to this character of controversy as that principle was first set forth and applied in *Lilley v. Fletcher, supra,* The soundness of the principle that one, aware of another's wrong likely to lead to his injury, cannot remain inactive to avert such injurious consequences so known, and then claim recompense for an injury proximately flowing therefrom, cannot be reasonably questioned. It is grounded in evident duty. Besides, if it be ignored in a case presenting a breach of it, the doctrine of proximate cause as an unvarying condition to a recovery of damages for an injury suffered would probably be seriously qualified. The distinction that must be taken between the principle under consideration and that announced and applied in the *Marbury Case,* 125 Ala. 230, 28 South. 438, 50 L. R. A. 620, is that the latter affirmed the absence of duty on a proprietor to anticipate negligence on the part of the carrier, whereas here the plea 2, to the sixth count, asserts a duty arising out of an act of negligence already committed. The soundness of the ruling in *L. & N. R. R. Co. v. Miller,* 109 Ala. 500, 19 South. 989, is not impugned by the holding made in this case on former appeal; for the reason, among others, that in *Miller's Case* the defense here interposed by plea to the sixth count was not presented. Plea 2 to the sixth count was proven beyond dispute, and hence the affirmative charge on that count was due to the defendant.

The third count of the complaint ascribed the destruction of the plaintiff's property to the negligent communication of fire directly thereto from a locomotive by the

defendant. There were tendencies in the proof requiring the submission of the issue to the jury, to the effect that the buildings or lumber of the plaintiff were ignited by fire from the defendant's locomotive. If the jury credited the stated tendencies of the evidence, the burden then passed to the defendant to show, at least prima facie, that the fire so communicated was emitted without negligence in the construction, equipment, and operation of the locomotive in question.—*L. & N. R. R. Co. v. Reese,* 85 Ala. 497, 5 South. 283, 7 Am. St. Rep. 66. If the evidence offered by defendant in negation of such negligence prima facie overcame the presumption that the communication of the fire as stated was the result of negligence —a question for the court, as was ruled in *Reese's Case, supra,*—in that event, then, the obligation was on the plaintiff, before it could recover, to adduce some affirmative evidence tending to show negligence in construction, equipment, or operation of the locomotive. The defendant introduced several witnesses, who testified that the locomotive was properly constructed, equipped, and operated. These witnesses were shown to be expert in reference to such matters. There is nothing discoverable in their testimony, as it is presented to this court, reasonably calculated to reflect upon its credibility. There are no inconsistent statements appearing, nor responses by the witnesses that could reasonably be taken as indicia of incorrectness, inaccuracy, or falsity. The court gave the general affirmative charge for the defendant on the whole case, and in reviewing his action we presume that he indulged the conclusion that the defendant had, by its evidence, met and overcome prima facie the presumption arising from the fact (if found from the tendencies of the plaintiff's evidence) that the fire was communicated directly to the plaintiff's propery from the defendant's locomotive. While the duty of the court in decid-

ing, in this character of cases, whether the defendant has met and overcome, prima facie, the presumption before stated, is a delicate one, this court is not convinced, on the record here, that the court erroneously concluded, from the evidence, that the defendant had discharged prima facie the burden passed to it by the presumption referred to above.

This brings us to the inquiry whether the plaintiff presented any evidence the tendency of which was to show negligence in the construction, equipment, or operation of this locomotive, causing the ignition of plaintiff's property. The evidence of the plaintiff on this issue, whether excluded by the court from interrogatories or not, has been particularly scrutinized and carefully considered; and after this we are unable to discover any evidence having the essential tendency to support the plaintiff's contention on the issue. It shows, to be sure, that sparks were emitted, on the occasion, in unusual quantities; but this unusual emission is referred, by the proof, to the flow of sparks from locomotives running on time and at a slower speed than when the locomotive or train was late. In other words, the increased, unusual, flow of sparks is attributed, in the evidence, to the speed of the locomotive. Such may be the case, and yet no negligence, the sine qua non to liability, colored the release of the fire causing the propery loss. It cannot be said that alone, because an engine is running 50 miles an hour and under greater head of steam emits more sparks than one running 25 miles an hour, that the former is, hence, negligently operated, constructed, or equipped. It may be in point of fact, and yet that action of the mechanism cannot, we think, justly afford a safe reason on which to predicate a finding that negligence, in one or more of the three particulars, allowed the sparks to be so emitted from the more rapidly running locomotive.

To be reconcilable as evidence tending to show negligence in the construction, equipment, or operation of a locomotive setting out fire, the emission of fire must have been unusual, as measured by a standard of operation at least substantially circumstanced as was the locomotive emitting fire in unusual quantities.

The court, on motion or objection of defendant, struck many parts of the answers of the plaintiff to interrogatories propounded to it by defendant under Code, 1896, § 1850 et seq.; and this seems to have been generally done upon the authority of *Garrison v. Glass,* 139 Ala. 512, 36 South. 725, and for the reason that such stricken answers were not responsive to the interrogatories propounded. This method of propounding interrogatories to adverse parties in actions at law was formulated (in 1837) before the Code of 1852. See Clay's Dig. 341, § 160; *Saltmarsh v. Bower,* 22 Ala. 221, and authorities therein cited. When the codification of 1852 was adopted, several changes were made in the provisions of the system from those prevailing theretofore. Notwithstanding these changes, at least of phraseology, this court, dealing with the statute as written in the Code of 1852, drew therefrom the same meaning and gave to the system the same effect as had been previously drawn and given it when otherwise written. The instance in mind is the case of *Crymes v. White & Johnson,* 37 Ala. 549. The decision was delivered at the June term, 1861. It was there said: "Giving to the sections of the Code (sections 2330-2336) authorizing the examination of parties by interrogatories the same construction which was put upon the old statute on that subject (Clay's Dig. 341, § 160), we must hold that the court erred in suppressing that portion of the defendant's answer above quoted. According to our former decisions, interrogatories under the statute are governed by the same rules

that apply to bills of discovery in chancery, so far as relates to the nature of the discovery sought and the effect of the answers as evidence when made. In *Saltmarsh v. Bower,* 22 Ala. 221, this subject underwent a careful consideration; and it was there held that, as in an answer to a bill of discovery, nothing can be considered *impertinent* which tends to disprove the existence of the cause of action or defense set up in the bill, so in an answer to interrogatories under the statute, whether it is *purely responsive,* or *contains affirmative irresponsive allegations* in *avoidance of the demand,* cannot be made the subject-matter of exception. See also, *Pritchett v. Munroe,* 22 Ala. 501; *Wilson v. Maria,* 21 Ala. 359." (Italics supplied.) As appears, it was expressly held, in the quoted case, that the respondent to interrogatories is not limited, in his answers thereto, to such as are responsive to the interrogatories propounded to him, but that he may incorporate in his answers any matter in avoidance of the demand, or of or in defense; the general restriction being, as in his answers to bills of discovery, that the answers shall not embrace impertinent matter. The statutes, as written in the Code of 1852, have been several times readopted in subsequent codifications, including that of 1907.

In *Allen v. Lathrop Lumber Co.,* 90 Ala. 490, 8 South. 129, and *Cain Lumber Co. v. Standard Dry. Kiln Co.,* 108 Ala. 346, 18 South. 882, the construction of these statutes taken in *Crymes v. White & Johnson* was not, doubted, but, on the contrary, was, in general terms, approved. This state of the law, in this regard, remained without reflection upon its correctness until the decision in *Bank v. Leland,* 122 Ala. 289, 294, 25 South. 195, when, for the first time, so far as we are advised, it was said in effect that answers merely irresponsive might be stricken. This holding was predi-

cated, it appears, upon the decision in *Culver v. A. M. R. Co.*, 108 Ala. 330, 333, 18 South. 827. This latter announcement does not sustain the proposition stated above, but does hold the eliciting of "legal evidence, facts which tend to support the claim of the plaintiff or the line of defense," to be the object of the system.—*Culver's Case*, and *Cain Lumber Co. v. Standard Co.*, adverted to before, appear in the same volume and are the expressions of the same Justices. It must be that neither of those decisions were intended to announce inconsistent rulings.—*Garrison v. Glass* is grounded in authority, on *Bank v. Leland.*

We are of the opinion that in the particular under consideration both of these decisions are unsound, and are, hence, overruled to that extent. They result in an abrupt and important departure from what had, for more than a quarter of a century, been the settled construction, application, and effect of these statutes. If the rule of the *Leland* and *Garrison Cases* is allowed to stand, the consequence is so opposed to common fairness, justice, and right, we entertain no doubt that the lawmaking branch of the government would repeal the statutes. The reason for this strong statement is found set down and conclusively supported in reason and authority in *Saltmarsh v. Bower* and *Crymes v. White & Johnson.* It is that if the interrogatee should be confined in his answers to only those interrogatories responsive to the interrogatories propounded to him, the power would be thereby given the interrogator to extract from the interrogatee only matter favorable to his action or defense and to leave the interrogatee dumb to explain or avoid in his answers the favorable (to the interrogator) fact or circumstance so elicited. Such a result cannot be sanctioned, especially in view of the fact that answers to pertinent inter-

rogatories, not otherwise improper or exempted from the requirement to be answered, may be compelled under rigorous penalties. The serious consequence indicated is not avoided by the fact that the party interrogated may testify on the trial; and this, for the reason, among others, that the interrogatee may die, or become otherwise disqualified to testify, between the time he is required to, and does answer, and the time of the trial - All of the Justices concur in the conclusion, as a result of which *Garrison v. Glass* and *Bank v. Leland* are pronounced unsound and are overruled in the particular indicated.

The foregoing opinion, in the respects that it treats and decides questions other than that prescribed by the rulings below under the influence of *Garrison v. Glass,* was prepared by the writer by direction of the majority of the court, consisting of Chief Justice DOWDELL and Justices SIMPSON, ANDERSON, and DENSON, and is adopted by them as the expression of their views.

Justices MAYFIELD and SAYRE and the writer are of the opinion that plea 2 to the sixth count was subject to the demurrer interposed to it, and therefore dissent from the conclusion of the court in the particular that they affirm the trial court in overruling that demurrer.

The judgment of the court below is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON, ANDERSON, DENSON, McCLELLAN and MAYFIELD, JJ., concur in overruling *Garrison v. Glass.* McCLELLAN, MAYFIELD, and SAYRE, JJ., dissent on plea 2.